**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PEARCE SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. _____ |
| | ) | |
| MARK COUNTZ | ) | |
| and ERICO UTILITY CONSTRUCTION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff PEARCE SERVICES, LLC ("Pearce"), by and through its undersigned attorneys, alleges as follows for its Complaint against MARK COUNTZ ("Countz") and ERICO UTILITY CONSTRUCTION, LLC ("Erico") (collectively "Defendants"):

## NATURE OF THE ACTION

1.      This action is the result of the premeditated plan and actions taken by Defendant Countz, the former Director of Business Development of Pearce, to unlawfully download and misappropriate Pearce's confidential and proprietary trade secrets and information for use at his new position as President and Chief Executive Officer ("CEO") of Erico, a direct competitor in the highly competitive telecommunication repair business.

2.      In April 2015, Countz was hired by Pearce as the Director of Business Development based out of Huntsville, Texas. As the Director of Business Development, Countz had access to Pearce trade secrets and confidential information.  On October 27, 2017, Countz notified Pearce that he was resigning, effective immediately.

3.      Unbeknownst to Pearce, in the months preceding his sudden resignation, Countz disregarded the legal duties he owed to Pearce and violated multiple statutory duties. As detailed

below, Countz's actions before and after his resignation unequivocally demonstrate that he was secretly planning to resign from Pearce with the express purpose of becoming the President and CEO of Erico. However, before announcing his resignation, he first stole all the confidential information and resources that would further his future competitive endeavors at Erico and enable him to divert business away from Pearce, despite the fact that they had been developed by Pearce at extraordinary cost over nearly two decades.

4.      Countz's deception continued through the very day that he announced his resignation.  When he quit, Countz intentionally misled Pearce, falsely stating that he was leaving to pursue a job in a non-competing service line when, in fact, he knew he was about to become the President and CEO of Erico and compete directly against Pearce.  Moreover, while still employed at Pearce, Countz actually began informing Pearce customers that he was "going to be doing the same work with the same technicians but this time [he would be] in charge and running the company from a lifelong telco prespective [sic]," and spent the month of October downloading Pearce confidential information and trade secrets as well as diverting business opportunities from Pearce to Erico.

5.      Countz did his best to cover-up his wrongdoing by attempting to delete evidence of his unlawful actions from his company issued computer.  Through forensic analysis, however, Pearce was able to identify Pearce materials that Countz misappropriated. In so doing, it has become painfully clear that Countz and Erico now have access to and are ***actually utilizing*** valuable Pearce trade secrets and confidential information. These actions threaten to irreparably harm Pearce's competitive advantage and business.

6.      Not only were Countz's actions while employed by Pearce violations of his fiduciary duties, Countz also violated trade secrets statutes and prohibitions against computer fraud.

7.      Consequently, Pearce brings suit against Countz for breach of fiduciary duties owed to Pearce and violations of state and federal prohibitions against computer fraud, and against both Defendants for misappropriation of trade secrets and tortious interference with legitimate business expectancies.  In doing so, Pearce requests that this Court immediately and permanently enjoin Erico and Countz from possessing or using any of its wrongfully obtained confidential information and trade secrets.

8.      Pearce also respectfully requests that this Court enter an order (1) prohibiting Erico and Countz from using, possessing, or having access to Pearce confidential information and trade secrets; (2) compelling Erico and Countz to return to Pearce all Pearce property, including all Pearce confidential information and trade secrets, in their custody, possession or control; (3) prohibiting Defendants from engaging in business with Pearce's current or former customers for which Defendants unlawfully solicited with misappropriated Pearce confidential information and trade secrets; (4) awarding Pearce compensatory and punitive damages for Defendants' intentional acts; and (5) awarding Pearce its reasonable attorneys' fees as provided for under applicable law.

## THE PARTIES AND RELEVANT PERSONS

9.      Pearce Services, LLC is a limited liability company registered under the laws of Delaware, with its principal place of business in Paso Robles, California.

10.      Mark Countz is a citizen of the State of Texas.  Upon information and belief, Countz is the current President and CEO of Erico.

11.     Erico Utility Construction, LLC is a limited liability company registered under the laws of Arkansas, with its principal place of business in Jonesboro, Arkansas.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Pearce's claims against Defendants under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, raise a federal question. Pearce's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal question that they form part of the same case or controversy. Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Countz because he is a citizen and resident of Texas.  This Court has personal jurisdiction over Erico because it employed a Texas resident and citizen, and the conduct sought to be enjoined by Pearce is related to this conduct within the forum state. This conduct renders Erico subject to personal jurisdiction by Texas courts pursuant to Texas' long arm statute because Erico has recruited Countz, a Texas resident, for employment. Tex. Civ. Prac. & Rem. Code § 17.042.  Venue is proper in the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b), because the Pearce property Pearce seeks to be returned is located in this District, and a substantial part of the events giving rise to Pearce's claims occurred in this District.

## BACKGROUND

### Pearce's Business and Countz's Role as Director of Business Development

14.     Pearce is a leading provider of repair, maintenance, engineering, installation and expansion solutions for the wireline and wireless telecommunications industries.

15.     Pearce has three business divisions: (a) its Wireline Division, (b) its Wireless Division, and (c) its Engineering Division. The Wireline Division is the industry leading provider of turnkey expansion and repair services for broadband remote terminals. Pearce's Wireless Division offers a comprehensive suite of cell site tower and ground services including: line & antenna, microwave, HVAC, power & electrical (generator, battery, power plant), site maintenance and inspection services. Pearce's Engineering Division provides turnkey telecommunications engineering services related to the design and deployment of outside plant equipment.

16.     Pearce has eighteen office locations throughout the United States covering approximately 20,000 cell sites and 45,000 terminals across the country.  Customers include leading broadband providers, wireless carriers, Original Equipment Manufacturers ("OEMs"), and asset owners.

17.     On April 6, 2015, Countz became the Director of Business Development of repair sales in the Wireline Division. In this senior sales position, Countz worked with the internal team, marketing staff, and other managers to increase sales opportunities and thereby maximize revenue for Pearce.  He performed his employment duties out of his home located in Huntsville, Texas and serviced customers throughout the United States.  Countz was primarily concerned with the repair of high voltage remote terminals and related broadband cabinetry for Pearce customers, including AT&T, CenturyLink, and Frontier.

18.     As the Director of Business Development, Countz had access to Pearce trade secrets and confidential information. These materials include, but are not limited to, customer lists, pricing information for Pearce services, comprising confidential and proprietary estimates, bids, and proposals; before and after pictures of repair jobs; business presentations including proprietary and confidential information; and Pearce's proprietary, password protected Field Management System which includes all information related to specific jobs undertaken by Pearce for all customers, including pictures of damage to be repaired, e-mails specifying what the customer has requested Pearce to do, directions on scope of work, quotes contained in excel spreadsheet format, internal proposals and proposals sent to the customer, communications with the customers, vendor utilization to buy parts and/or supplies for the job, job-level profitability reports, and other financial information.

19.     These materials have been developed by Pearce over the past 19 years and contribute greatly to its ability to maintain its competitive edge in a highly competitive industry. These materials were developed after continuous and recurring work with customers. By repeatedly performing the same expert work for these customers, Pearce has developed cost effective methods to perform such work. These pricing and repair methods developed by Pearce derive independent economic value from not being generally known to, and not being readily ascertainable by, Pearce's competitors, and enable Pearce to provide the best interpersonal, institutional, and knowledge-based outcomes for its customers.

20.     Upon hire, Pearce informed Countz about the requirement and necessity of keeping its proprietary information confidential and trained Countz regarding procedures in place to restrict access to information stored on Pearce internal networks containing proprietary and confidential information.   Pearce also educated Countz regarding how he could utilize

internal IT personnel to run operational and sales reports based upon information stored in Pearce's internal networks.

**Protection of Pearce Trade Secrets and Confidential Information**

21.      Due to the valuable nature of Pearce's proprietary information and trade secrets, Pearce protects its information by, among other things: informing its employees about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; granting only certain employees permission levels to access its most sensitive and valuable information; restricting access to its computer networks to computers that were set up by internal IT professionals; and upon termination of employment relationships, immediately deactivating passwords, suspending access to company e-mail accounts, and obtaining possession of computers, keys, and keycards.

22.      Hence, Pearce's trade secrets and proprietary information are not available to the general public and are closely guarded by Pearce.  Pearce keeps such information strictly confidential in order to maintain a competitive advantage in the highly competitive telecommunication repair business.

**Countz Steals Pearce Trade Secrets and Confidential Information Before
Leaving to Become President & CEO of Erico**

23.      On October 27, 2017 Countz sent an e-mail to Pearce stating his intent to resign effective immediately.  In the days preceding his resignation, Countz had become unresponsive. During his exit interview, he informed Pearce that he was going to work for a friend of a friend to do cable placement, a service line unrelated to his work at Pearce.

24.     In the days following Countz's departure, however, Pearce discovered that Countz's statements were a lie, and that Countz was in fact leaving to become President and CEO of Erico, a competing telecommunication repair business.

25.     Furthermore, on or around October 30, 2017, Monte Emery, Wayne Still, and Matthew Roemer, three of Pearce's most experienced technicians in the repair service line, submitted their resignations to Pearce and subsequently joined Erico.  On the same day, Kenny Price, Pearce's Senior Estimator, based in Pearce's corporate office in California left Pearce to become the Director of Business Development for Erico.

26.     Due to the realization that Countz left Pearce to be the new President and CEO of a direct competitor and the growing concern regarding his motives and the potential damage Pearce faced, Pearce immediately initiated an internal investigation.

27.     This investigation revealed actions by Countz that demonstrated that he had been orchestrating a plan to leave Pearce and take its customers well before terminating his employment with Pearce.  For example, Pearce discovered that on September 5, 2017, Countz sent an e-mail to his personal e-mail account including a business outline of the new entity "Erico Utility Construction," listing its current services as telecommunications repair, and indicating plans to expand into several service lines already serviced by Pearce.

28.     Furthermore, upon information and belief, it was Countz who persuaded the current owners of Erico to purchase the company from its former owner, Bill Erickson, and name him as its President and CEO.  Moreover, upon information and belief, it was Countz that initiated and implemented Erico's expansion into service lines that directly compete with Pearce.

29.     As a result of these realizations, Pearce engaged a forensic analyst to examine Countz's computer. After an extensive forensic review, the forensic analyst uncovered that

Countz downloaded documents from Pearce's internal networks *en masse* between October 8 and the date of his resignation on October 27.  Specifically, the forensic analyst discovered a Google Drive folder created on October 8, 2017, which contained numerous downloaded Pearce materials and files, all downloaded in the weeks immediately preceding Countz's resignation. Countz had attempted to cover his tracks by deleting the evidence from his computer, but inadvertently left a trail to his secret Google Drive folder.

30.     Taking the proverbial kitchen sink, Countz downloaded essentially ***all*** the confidential information stored in Pearce's internal networks that would further his future competitive endeavors at Erico and enable him to divert business away from Pearce, including the following:

> a.  file folders such as "All Company Drive Presentations" that, upon information and belief, include all Pearce's presentations it has developed over the last twenty years, where each presentation was the result of approximately 5 days to one month of work;
>
> b.  a folder titled "Before & Afters" that, upon information and belief, includes pictures of repair work performed by Pearce, which Pearce considers as confidential and proprietary Pearce information;
>
> c.  several excel spreadsheets containing (1) all revenue for Pearce's Wireline Division for the years 2014 until 2017; (2) all repair jobs received by Pearce in 2017; (3) Pearce Repair Volumes containing estimated savings for Pearce customers; (4) full contact lists for Pearce customers; and (5) all sales made by Pearce in 2017;
>
> d.  documents containing repair examples for specific customers;

e.  folders from Pearce's proprietary, password protected Field Management System for several different repair jobs for multiple Pearce customers; and

f.  documents and materials regarding a new and developing service line relating to fiber services, which was outside the scope of Countz's duties at Pearce. These fiber services are part of a new Pearce service line with very large growth opportunity for Pearce that was not related to Countz's job duties during his employment at Pearce.

31.    Much, if not all, of these materials wrongfully downloaded by Countz are proprietary and confidential trade secrets that permit Pearce to maintain its competitive advantage in the telecommunication repair business, and access to such materials by a competitor could be devastating to Pearce's business.

32.    For example, Erico can use the information obtained from Pearce's proprietary, password protected Field Management System to undercut Pearce's pricing, using that information to discover where and for whom Pearce is performing repairs, obtaining Pearce's basis of estimates and pricing, as well as obtaining all Pearce's customer contact information.

33.    Upon further review, Countz's raid of Pearce's internal networks was not the end of his misconduct. While still employed by Pearce, Countz actually diverted business to Erico that was presented to him by Pearce customers. Specifically, upon information and belief, at least two jobs that Countz was approached about while still employed by Pearce were instead awarded to Erico due to Countz's actions.  In diverting these jobs to Erico, Countz used quote and proposal forms *identical* to those used by Pearce, merely replacing the Pearce logo with the Erico logo.

34.     Furthermore, as part of its business, Pearce purchases scrap electronic cabinets and video-ready access devices ("VRADs") from AT&T to utilize for future repair work. VRADs provide digital subscriber line access and high-definition television programming to customers subscribed to services such as AT&T's U-verse. On September 18, 2017, Countz communicated with an AT&T employee regarding 92 VRAD cabinets from AT&T's Houston yard.   Pearce would routinely use procured scrap cabinet parts in their ordinary course of business to fix damaged cabinets to save money on repairs.   Countz, however, never informed Pearce of these 92 cabinets available for purchase. Instead, he purchased the 92 cabinets while still employed at Pearce and stored them until he resigned with the intent to use them to repair cabinets for AT&T on behalf of Erico.   The storage company even mistakenly billed Pearce for the storage fees.

35.     Suffice it to say, Countz's actions before and after his resignation demonstrate the fact that he was consciously planning to resign from Pearce with the express purpose of becoming the President and CEO of Erico, and his intent to take all the confidential information and resources he could find which were developed by Pearce over multiple decades at extraordinary cost in order to allow him to divert business away from Pearce. Countz lied to Pearce regarding his plans for work after his resignation from Pearce, when he had in fact facilitated the purchase of Erico and his designation as its President and CEO. While he told Pearce he was leaving to work in a non-competitive service line, he was simultaneously informing Pearce customers that he was "going to be doing the same work with the same technicians but this time [he would be] in charge and running the company from a lifelong telco prespective [sic]," and spent the month of October downloading Pearce confidential information and trade secrets as well as diverting business opportunities from Pearce to Erico.

36.     There is no question that Countz willfully and maliciously violated his fiduciary duties owed to Pearce, intentionally interfered with its business relationships and expectancies, and misappropriated its trade secrets.

### Irreparable Harm to Pearce

37.     Pearce's trade secrets, confidential information, and goodwill are at risk because Defendants are unfairly competing with Pearce by utilizing Pearce trade secrets and confidential information obtained by unlawful means.

38.     Pearce has no adequate remedy at law, and unless injunctive relief is granted, Pearce will continue to be irreparably harmed by Countz's and Erico's use of Pearce trade secrets and confidential information in a manner that is not fully compensable by money damages.  Injunctive relief is appropriate considering Pearce's significant interest in its trade secrets and confidential information.

39.     Accordingly, Pearce is suffering irreparable harm and a permanent injunction is appropriate.

### COUNT I
### (Violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, Against Both Defendants)

40.     Pearce repeats and realleges Paragraphs 1 through 39 of the Complaint, as if fully set forth herein.

41.     During the course of his relationship with Pearce, Countz was provided access to substantial amounts of Pearce confidential information, including pricing, estimates, and customer list information.

42.     Pearce confidential information is not available to the general public and is closely guarded by Pearce. Pearce keeps such information strictly confidential in order to maintain a competitive advantage in the telecommunications repair industry.

43.     Pearce confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), because the information is not generally known outside of Pearce's business, the information is not generally known by employees and others involved in Pearce's business, Pearce has taken reasonable measures to guard the secrecy of the information, the information is of great value to Pearce and its competitors, Pearce invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Pearce continuously uses the information in its business.

44.     The economic value of the Pearce trade secrets/confidential information Countz had access to while employed by Pearce is over $500,000.

45.     Countz unlawfully stole, with the intent to use in a competing business, Pearce trade secrets and confidential information while still employed at Pearce and is now using that information in his new position at Erico.

46.     Unless restrained, Countz will use, divulge and/or otherwise misappropriate Pearce trade secrets and confidential information. Indeed, upon information and belief, Countz has disclosed Pearce confidential information and trade secrets to Erico, a direct competitor of Pearce.

47.     Erico and Countz have utilized the unlawfully obtained confidential information and trade secrets to unfairly compete and solicit Pearce customers, and should not be able to reap the benefits of their unlawful conduct.

48.     As such, Defendants, acting in concert, are using Pearce confidential information and trade secrets in order to unfairly compete with Pearce.

49.     Defendants' continued possession and use of Pearce confidential information demonstrates that Countz has no intention of complying with the law, and that Erico will continue to facilitate his knowing theft and misuse of Pearce trade secrets and confidential information.

50.     Naturally then, Pearce requests an order enjoining Defendants from using any Pearce trade secrets and confidential information, and from disclosing Pearce trade secrets and confidential information to anyone not authorized to receive it, as well as an order prohibiting Defendants from engaging in business with Pearce's current or former customers for which Defendants unlawfully solicited with misappropriated Pearce confidential information.

51.     Pearce also requests an order requiring Defendants to return any and all Pearce confidential information to Pearce.

52.     Finally, Defendants' misappropriation of Pearce trade secrets has been willful and malicious, and Pearce has incurred significant damages as a result of Defendants' misappropriation of Pearce confidential information.

53.     Defendants' actions have damaged Pearce's goodwill, reputation, and legitimate business interests.

54.     Pearce is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

**COUNT II**
**(Violation of the Texas Uniform Trade Secrets Act,**
**Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, *et seq.*, Against Both Defendants)**

55.     Pearce repeats and re-alleges each and every allegation contained in Paragraphs 1 through 54 of the Complaint, as if fully set forth herein.

56.     During the course of his relationship with Pearce, Countz was exposed to substantial amounts of Pearce confidential information.

57.     For instance, Countz had access to materials comprising confidential and proprietary estimates, bids, and proposals; before and after pictures of repair jobs; business presentations including proprietary and confidential information; customer lists; customer contact information; and Pearce's proprietary, password protected, Field Management System, which includes all information related to specific jobs undertaken by Pearce for all customers, including pictures of damage to be repaired, e-mails specifying what the customer has requested Pearce to do, directions on scope of work, quotes contained in excel spreadsheet format, internal proposals and proposals sent to the customer, communications with the customers, and vendor utilization to buy parts and/or supplies for the job.

58.     This information is not available to the general public and is closely guarded by Pearce. Pearce keeps such information strictly confidential in order to maintain an advantage in the highly competitive telecommunication repair business.

59.     This information is considered a trade secret under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001, *et seq*., because Pearce derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

60.     The economic value of the Pearce trade secrets/confidential information Countz had access to as Director of Business Development is over $500,000.

61.     Under the TUTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined." Tex. Civ. Prac. & Rem. Code Ann. § 134A.003.

62. Countz has misappropriated Pearce confidential information and trade secrets by downloading it off its internal networks without permission and using those resources in his new position as President and CEO of Erico.

63. Both Defendants are misappropriating Pearce trade secrets by unlawfully possessing and utilizing Pearce property, including Pearce confidential information, and using that information to solicit Pearce customers.

64. Defendants' unlawful possession of Pearce property, including Pearce confidential information, with clear intent to use such information to expand Erico's business constitutes the "threatened" misuse of Pearce trade secrets and injunctive relief is therefore appropriate.

65. Erico and Countz have utilized the unlawfully obtained confidential information and trade secrets to unfairly compete and solicit Pearce customers, and should not be able to reap the benefits of their unlawful conduct.

66. Pearce has incurred significant damages as a result of Defendants' conduct. Defendants' illegal solicitations through the use of Pearce confidential information, and other actions, have caused Pearce to lose customers and potential customers; and has also damaged Pearce's goodwill, reputation and legitimate business interests.

67. Pearce has no adequate remedy at law and, unless injunctive relief is granted, will continue to be irreparably harmed by Defendants' misappropriation in a manner that is not fully compensable by money damages.

68. Accordingly, Pearce requests that this Court enter an order enjoining Defendants from using any Pearce confidential information and from disclosing Pearce confidential information to anyone not authorized to receive the confidential information.

69.     Moreover, Defendants' misappropriation of Pearce's trade secrets was willful and malicious.

70.     As a direct and proximate result of Defendants' misappropriation, Pearce requests an award of its compensatory damages, as well as exemplary damages and its reasonable attorneys' fees pursuant to the TUTSA.

## COUNT III
### (Breach of Fiduciary Duty Against Mark Countz)

71.     Pearce repeats and realleges Paragraphs 1 through 70 of the Complaint, as if fully set forth herein.

72.     Until Countz resigned on October 27, 2017, he was an employee and agent of Pearce and, as such, owed a fiduciary duty to Pearce.

73.     Countz maliciously and willfully breached these duties owed to Pearce by unlawfully and inappropriately removing confidential, proprietary, and trade secret information from Pearce internal networks while still employed by Pearce to use in his position at a competing business.

74.     Countz also sought to divert business away from Pearce while still employed by Pearce to Erico, a Pearce competitor.

75.     As a direct and proximate result of Countz's multiple breaches of fiduciary duties, Pearce has been monetarily harmed by, among other things, loss of profits and business that would have gone to Pearce but for Countz's breach of duty.

76.     Furthermore, Pearce has been and continues to be irreparably harmed by Countz's disclosure and use of Pearce trade secrets and confidential information. As such, Pearce requests an award of its compensatory damages, as well as injunctive relief to prevent any further irreparable harm, including, but not limited to, an order prohibiting Countz from engaging in

business with Pearce's current or former customers for which Countz unlawfully solicited with misappropriated Pearce confidential information.

**COUNT IV**
**(Violation of the Computer Fraud and Abuse Act,**
**18 U.S.C. § 1030, Against Mark Countz)**

77.     Pearce repeats and realleges Paragraphs 1 through 76 of the Complaint, as if fully set forth herein.

78.     Pearce has eighteen office locations throughout the United States, covering approximately 20,000 cell sites and 45,000 remote terminals.  As such, confidential, proprietary information and trade secrets stored on their internal networks is used to conduct business throughout the United States.

79.     Countz intentionally exceeded his authorized access to obtain and download Pearce confidential and proprietary information that he was not entitled to obtain when he downloaded Pearce files in September and October of 2017 to use in his new position at a competing business.

80.     Some of the information he removed from the internal networks was not related to his duties at Pearce and was beyond the scope of Countz's access in Pearce's internal networks.

81.     The computer used by Countz to access such information he unlawfully removed from Pearce's internal networks was used in interstate commerce to conduct Pearce's national business.

82.     Countz has since intentionally and willfully communicated and/or delivered such information to other Erico employees and agents, who are not entitled to receive it.

83.     As a direct and proximate result of these actions, Pearce has been damaged and is threatened with continuing irreparable harm so long as its inappropriately obtained information is in the possession of Defendants.

**COUNT V**
**(Violation of the Breach of Computer Security Act,**
**Tex. Penal Code Ann. § 33.02, Tex. Civ. Prac. & Rem. Code 143.002,**
**Against Mark Countz)**

84.     Pearce repeats and realleges Paragraphs 1 through 83 of the Complaint, as if fully set forth herein.

85.     Countz intentionally and knowingly accessed his Pearce computer and Pearce internal networks without the effective consent of Pearce.  Specifically, Countz accessed Pearce internal networks to obtain and download Pearce confidential and proprietary information without Pearce's consent when he downloaded Pearce files in September and October of 2017 to use in his new position at a competing business.

86.     Pearce never provided consent allowing Countz to access its internal networks for any purpose other than to facilitate his employment with Pearce. Thus, Countz did not have Pearce's consent when he downloaded its confidential information and trade secrets for use in his position at Erico.

87.     Some of the information he removed from the internal networks was not related to his duties at Pearce and was beyond the approved scope of Countz's access in Pearce's internal networks.

88.     Countz accessed and downloaded Pearce's confidential and trade secret information with the intent to harm Pearce by wrongfully taking such information to use against Pearce in his new position as President and CEO of Erico.

89.     Countz has since intentionally and knowingly communicated and/or delivered such information to other Erico employees and agents, who are not entitled to receive it.

## COUNT VI
### (Tortious Interference with Business Expectancy, Against Both Defendants)

90.    Pearce repeats and realleges Paragraphs 1 through 89 of the Complaint, as if fully set forth herein.

91.    Pearce had an ongoing relationship with Pearce customers, including CenturyLink and AT&T, and as such a reasonable probability existed that Pearce would have entered into a business relationship with both of these customers.

92.    While a reasonable probability exists that Pearce would have received all the business from these customers that was instead diverted to Erico, it is clear that at the very least Pearce would have entered into business arrangements with CenturyLink and AT&T regarding the jobs they approached Mark Countz about while Countz was still employed by Pearce.

93.    However, Countz and Erico have acted with a conscious desire to prevent these relationships from occurring with Pearce, instead diverting them to Erico.

94.    Countz's and Erico's conduct was in violation of his fiduciary duties and trade secret laws, and as such was independently tortious or unlawful.

95.    As a direct and proximate result of these actions, Pearce has been damaged and is threatened with continuing irreparable harm so long as its inappropriately obtained information is in the possession of and being actively utilized by Defendants.

## CONCLUSION AND PRAYER

**WHEREFORE**, Plaintiff PEARCE SERVICES, LLC respectfully requests that this Court:

1.    Enter an injunction enjoining and restraining Defendants, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using any Pearce confidential information for their own benefit and from disclosing Pearce confidential information to anyone not authorized to receive the information.

2.      Enter an order requiring Defendants to return all Pearce confidential information in their possession, custody or control to Pearce;

3.      Enter an order prohibiting Defendants from engaging in business with Pearce's current or former customers for which Defendants unlawfully solicited with misappropriated Pearce confidential information and trade secrets;

4.      Enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

5.      Enter judgment against Countz for compensatory damages in an amount to be determined at trial;

6.      Enter judgment against Defendants for punitive damages in an amount to be determined at trial;

7.      Award Pearce the costs and expenses, including reasonable attorneys' fees, Pearce incurs as a result of Countz's violation of State and Federal law; and

8.      Award Pearce such other relief as the Court may deem just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements set forth in the foregoing Verified Complaint for Injunctive and Other Relief are true and correct except as where such statements are made upon information and belief.

Dated: January 5, 2018

_____
Matthew Gillette

43451521v.4

Dated:  January 5, 2018

Respectfully submitted,

*/s/  Jesse M. Coleman*

**SEYFARTH SHAW LLP**

**Jesse M. Coleman**
Tex. Bar No. 24072044
Seyfarth Shaw LLP
700 Milam Street
Suite 1400
Houston, Texas 77002
(713) 238-1805

**Robert B. Milligan (to be admitted *pro hac vice*)**
Seyfarth Shaw LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067
(310) 201-1579
**Eric Barton (to be admitted *pro hac vice*)**
Seyfarth Shaw LLP
1075 Peachtree Street NW
Atlanta, Georgia 30309
(404) 885-6772
**Emily C. Kesler (to be admitted *pro hac vice*)**
Seyfarth Shaw LLP
233 S Wacker Drive,
Suite 8000
Chicago, Illinois 60606
(312) 460-5442

*Attorneys for Plaintiff Pearce Services, LLC*